UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOHN W. FERRON,

        **Plaintiff,**                            **Case No. 2:06-cv-322**
                                              **JUDGE GREGORY L. FROST**
        **v.**                                   **Magistrate Judge Mark R. Abel**

VC E-COMMERCE
SOLUTIONS, INC., et al.,

        **Defendants.**

OPINION AND ORDER

This diversity action is before the court for consideration of a motion for summary

judgment (Doc. #30) filed by Plaintiff, John W. Ferron, a memorandum in opposition (Doc. #

41) filed by Defendant OptInRealBig.com, LLC , and a reply memorandum (Doc. # 47) filed by

Plaintiff.  Also before the Court is a related motion to strike (Doc. # 45) filed by Plaintiff, a

memorandum in opposition (Doc. # 50) filed by Defendant OptInRealBig.com, LLC, and a reply

memorandum (Doc. # 51) filed by Plaintiff.  For the reasons that follow, the Court **DENIES** both

motions.

**I.  Background**

Plaintiff, John W. Ferron, is an Ohio attorney and user of various e-mail accounts through

which he has allegedly received a multitude of e-mails from Defendants VC E-Commerce

Solutions, Inc., OptInRealBig.com, LLC ("OptIn"), and various Doe Defendants.  On June 8,

2006, Plaintiff filed the instant action in which he asserts that OptIn's actions violated the Ohio

Consumer Sales Practices Act, specifically Ohio Rev. Code § 1345.02(A).  (Doc. # 8.)  Plaintiff

also seeks a declarative judgment to this effect and permanent injunctive relief to stop the

transmission to any Ohio consumer of e-mail messages from Defendants.

On October 11, 2006, Plaintiff moved for summary judgment against OptIn.  (Doc. # 30.)

In response, OptIn filed with its memorandum in opposition an exhibit titled "Affidavit of Steven

Richter."  (Doc. # 41, Ex. A.)  This filing was not personally signed by Richter, however, and

instead bears a signature line reading "Steven Richter by Trudy DeBell" with a following

notarization.  Plaintiff consequently filed a motion to strike this the Richter document.  (Doc. #

45.)  The parties have completed their briefing, and both motions are now ripe for disposition.

## II.  Motion to Strike

As noted, Plaintiff moves this Court to strike OptIn's memorandum in opposition exhibit

titled "Affidavit of Steven Richter" (Doc. # 41, Ex. A) on the grounds that Richter did not

actually signed this filing.  Plaintiff argues that because the first document in question was not

signed by the purported affiant, it simply cannot constitute an affidavit offered as summary

judgment evidence.  *See Wright v. Asset Acceptance Corp.*, 2000 WL 33216031, at *5 (S.D.

Ohio 2000) ("an 'affidavit' which is unsigned and not notarized cannot qualify as proper Rule 56

evidence").

OptIn has responded to that argument by filing a December 7, 2006 affidavit that bears

Richter's signature.  (Doc. # 50, Ex. A.)  This second filing explains that Richter had a proxy

sign the first filing at his direction because he was out of the country at the time of its execution.

2

Richter also states in the second filing that he directed the signing-by-proxy and that "[t]o this day I fully endorse the entire contents of the affidavit."  (Doc. # 50, Ex. A ¶ 6.)

The Court will consider the contents of the first filing.  There is some support for the proposition that the document under attack is in fact a viable affidavit.  3 Am. Jur. 2d *Affidavits* § 9 (2d ed. 2002) (citing cases supporting the propositions that "an affidavit must be signed by the deponent, or his name must appear therein as the person who took the oath, in order to constitute a formal affidavit" and that "[a] plaintiff's statement was an affidavit, despite the lack of his signature, where the plaintiff's name appeared as the person who took the oath").  The preamble paragraph of the document states that Richter was indeed under oath.[1]  (Doc. # 41, Ex. A.)  Thus, some courts would be reluctant to regard the filing as an improper affidavit.

This Court recognizes that, as the Magistrate Judge noted in his withdrawn January 26, 2007 Order (Doc. # 59), the Sixth Circuit has stated in an unreported case that "[u]nsigned affidavits do not comply with Fed. R. Civ. P. 56(e)."  *Nassif Ins. Agency, Inc. v. Civic Property and Cas. Co.*, No. 03-2618, 2005 WL 712578, at *3 (6th Cir. Mar. 30, 2005).  Notably, the affidavit at issue in *Nassif* was also not notarized.  *Id.*  This Court need not decide whether a notarized but unsigned-by-the-affiant document qualifies as an affidavit under *Nassif* and related cases, however, because the subsequent valid Richter Affidavit moots the issue.

---

[1]  This paragraph also states that Richter "personally appeared" before the notary, a representation belied by the circumstances explained in Richter's December 7, 2006 Affidavit. The Court is concerned by the notary's failure to delete the appearance component from what appears to be boilerplate, but what is critical to today's decision that there is no evidence that the oath component of the preamble is incorrect.  *See* 11 James Wm. Moore, *Moore's Federal Practice* § 56.14[1][b], at 56-158 (3d ed. 2006) ("[C]ourts should not be hypertechnical when reviewing the requirements and details of the affidavit's execution, such as the presence of the stamp or seal of a notary.").

There is support for the position that even if the initial submission were indeed flawed, OptIn managed to repair its error by filing the December 7, 2006 Richter Affidavit.  (Doc. # 50, Ex. A.)  Plaintiff has not directed this Court to any case law–and the Court is not aware of any law–that indicates that the December 7, 2006 filing (Doc. # 50, Ex. A) cannot incorporate by reference the earlier filed document (Doc. # 41, Ex. A).  In contrast, the Court has found some authority that provides support for OptIn's salvage operation.  *See McLaughlin v. Copeland,*  435 F. Supp. 513, 521 (D. Md. 1977) (stating that although "[t]here is no provision in Rule 56 for the resuscitation of a defective affidavit by a later affidavit under either an incorporation by reference or a relation back theory . . . the court will assume that this is permissible").  Thus, even if the initial filing is flawed, the information contained in that document is before the Court by way of the second filing.[2]

---

[2]  The Court recognizes that the filing of the Richter Affidavit on December 7, 2006 is well past the filing of OptIn's November 1, 2006 memorandum in opposition to the summary judgment motion.  This does not raise an issue even if OptIn's first filing is not a sufficient affidavit, despite the fact that piecemeal submission of summary judgment evidence violates the rules of this Court.

The Local Civil Rules state that "[w]hen proof of facts not already of record is necessary to . . . oppose a motion, all evidence then available shall be discussed in, and submitted no later than, the primary memorandum of the party relying upon such evidence."  S.D. Ohio Civ. R. 7.2(d).  The rules provide for concurrent filing of a memorandum in opposition and its evidence. S.D. Ohio Civ. R. 7.2(d) & (e).  When "evidence is not available to meet this schedule . . . counsel shall consult one another and attempt to stipulate to an agreed Motion for extension of the schedule established by this Rule; failing agreement, counsel shall promptly bring the matter to the attention of the Court in order to avoid piecemeal submission of evidence and unnecessary memoranda."  S.D. Ohio Civ. R. 7.2(d).  There is no issue here with a harmful violation of the local rules, however, because any piecemeal filing has not actually prejudiced Plaintiff, who was aware of and responded to the contents of the first Richter document in his reply memorandum. (Doc. # 47, at 17.)

Certainly, OptIn could have and should have sought to avoid the unnecessary affidavit issue before the Court by taking steps to produce initially an affidavit signed by Richter in front of a notary.  But despite OptIn's arguably risky practice, the Court declines to strike the November 1, 2006 filing.  Even if the initial filing is flawed, OptIn's second filing incorporates that document's content.  Although not filed with the memorandum in opposition, the second filing presents no prejudice to Plaintiff because he was aware of the information and (although moving to strike the information) presented a reply memorandum alternative argument that addressed the substantive merits of Richter's representations.  (Doc. # 47, at 17.)

This leads to the second affidavit-related issue: whether the Court should strike Paragraph 7 of the November 1, 2006 filing  (Doc. # 41, Ex. A) because it is allegedly not based on personal knowledge.  The paragraph states that "[t]he company has never knowingly disseminated or reproduced information through the Internet, and specifically to Plaintiff John Ferron, in violation of Ohio Revised Code Sections 1345.01 to 1345.13."  (Doc. # 41, Ex. A ¶ 7.) Plaintiff argues that Richter's statement is conclusory, but the statement speaks to the company's *awareness* of a statutory violation and is not simply a conclusory denial of a violation.

Richter's statement concerning whether the company knew it was violating the statutory scheme targets the "publisher" exception discussed below.  As both General Counsel and President of OptIn, Richter is a person who can testify to such matters because he is the individual charged with knowing his company's business practices and with speaking for his company.  Thus, the statement is based on personal knowledge insofar as Richter necessarily speaks for the company.

The Court therefore **DENIES** Plaintiff's motion to strike.  (Doc. # 41.)

### III.  Motion for Summary Judgment

#### A.  Standard Involved

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Products, Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "  *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

**B. Analysis**

Plaintiff moves for summary judgment against OptIn on only the first count of its two-count amended complaint, which is the Ohio Rev. Code § 1345.02 claim.  The applicable pre-January 1, 2007 version of that statute provides:

> No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction.  Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after this transaction.

Ohio Rev. Code § 1345.02(A).  Plaintiff contends that OptIn has violated this statute in two general basic ways: (1) OptIn has committed numerous administrative code violations that serve as Ohio Consumer Sales Practices Act ("OCSPA") violations, and (2) OptIn has conducted business in Ohio without first registering with the Ohio Secretary of State as out-of-state businesses are required to do.  This Court shall address each theory in turn.

Plaintiff first argues that OptIn has violated numerous Ohio Administrative Code provisions that amount to prohibited acts under the statutory scheme.  OptIn has responded by alleging that numerous factual disputes exist, including (1) whether Plaintiff is a "consumer" who was engaged in a "consumer transaction" as those terms are defined under the OCSPA, (2) whether any e-mails deceived Plaintiff, (3) whether Plaintiff failed to mitigate damages and has unclean hands, and (4) whether the OCSPA applies to OptIn in this case.

The Court need not and does not decide the first three issues presented because, even assuming *arguendo* that Plaintiff prevails on each argument, there is a dispute of material fact as to OptIn's fourth contention that precludes summary judgment here.  The OCSPA provides:

> Sections 1345.01 to 1345.13 of the Revised Code do not apply to:

. . .

   (B)  A publisher, broadcaster, printer, or other person engaged in the
dissemination of information or the reproduction of printed or pictorial matter insofar as
the information or matter has been disseminated or reproduced on behalf of others
without knowledge that it violates sections 1345.01 to 1345.13 of the Revised Code[.]

Ohio Rev. Code § 1345.12(B).  OptIn posits that it falls within this exception to the application
of the OCSPA.

   OptIn has produced evidence that it "assist[s] . . . clients in the advertisement and
dissemination of information regarding their products and services through the Internet."  (Doc.
# 41, Ex. A ¶ 2.)  This creates an issue of fact as to whether OptIn was acting in any capacity
other than that of a "person engaged in the dissemination of information or the reproduction of
printed or pictorial matter " on behalf of others.  OptIn has also asserted a purported lack of
knowledge of an Ohio law violation in connection with this dissemination.  (Doc. # 41, Ex. A ¶
7.)  This too presents a factual issue.  Together, OptIn's factual representations preclude
summary judgment because, necessarily resolving all inferences in favor of OptIn, the Court
recognizes that a reasonable jury could accept OptIn as falling within §1345.12(B), which means
that the company would be beyond the reach of § 1345.02(A) here.  Although Plaintiff has
produced some evidence calling OptIn's claim to the exception into question, the dispute
presents a factual issue for the jury.

   The Court recognizes that Plaintiff asserts in two sentences in his reply memorandum that
Defendant has waived the § 1345.12(B) defense by failing to assert it in the Answer.  (Doc. #47,
at 16.)  But Plaintiff fails to present a rationale or even citation to authority to support the
validity of his conclusory assertion of waiver.

This leaves for disposition Plaintiff's second ground for summary judgment, that OptIn has violated § 1345.02 by failing to register with the Ohio Secretary of State as a out-of-state entity doing business in Ohio.  Curiously, OptIn does not respond to this aspect of the summary judgment motion in its memorandum in opposition, and Plaintiff does not return to the alternative ground for judgment in his reply memorandum.  Despite this dearth of briefing, the Court recognizes that two basic problems exist with Plaintiff's argument for summary judgment on this point.

The Court is first concerned with the substance of Plaintiff's argument.  In making his argument, Plaintiff cites Ohio Rev. Code § 1705.54(A) for the proposition that "[f]oreign limited liability companies doing business in Ohio are required to register with the Ohio Attorney General."  (Doc. # 30, at 23.)  But that statute provides that "[b]efore transacting business in this state, a foreign limited liability company shall register with the secretary of state."  Ohio Rev. Code § 1705.54(A).  The Court is confused as to Plaintiff's misreading of the statute that switches Ohio state officials.

Assuming that Plaintiff has simply erred and is not trying to make a point or argument that evades this Court, the Court also notes a second problem with Plaintiff's cursory argument.  To support his argument, Plaintiff directs this Court to the unreported Ohio common pleas court case of *State ex rel. Brown v. Gem Collectors International, Ltd.*, No. 81CV-09-4788 (June 9, 1983),[3] which is unavailable to this Court through electronic databases and which Plaintiff has

---

[3] The Court notes that *Venture Out Resorts* gives the date of Gem Collectors as June 9, 1983.  *Venture Out Resorts*, 1988 WL 877630, at *4.  Plaintiff's briefing states that Gem Collectors was journalized on April 6, 1983.  (Doc. # 30, at 23.)  Both references use the same case number.

not supplied to the Court despite referencing it as a purported attachment to his summary

judgment motion.  The Court has found an additional Ohio case that cites *Gem Collectors* for the

apparently shared proposition that "[t]he act or practice of [a defendant] in conducting business

in the State of Ohio prior to being licensed to do business as a foreign corporation as required by

Ohio Revised Code Section 1703.03 constitutes an unfair or deceptive act or practice prohibited

by the Ohio Consumer Sales Practices Act at R.C. § 1345.02(A) as determined by Ohio courts."

*State ex rel. Celebrezze v. Venture Out Resorts, Inc.*, No. 87-C-210, 43-14146, 1988 WL 877630,

at *4 (Ohio Com. Pl. Feb. 24, 1988).[4]  Two aspects of that precedent are notable: one, that the

infraction involves § 1703.03[5] and not § 1705.54(A), and two, that the line of cases including

*Gem Collectors* and *Venture Out Resorts* were actions by the Ohio Attorney General and not

private causes of action.

The first point is important because it renders Plaintiff's reliance on *Gem Collectors*

misplaced; it means that Plaintiff has cited a licensing case to support his registration argument.

---

[4]  Other cases also stand for the proposition that a violation of § 1703.03 equals a
violation of § 1345.02.  See *State ex rel. Celebrezze v. Creditors Multi Systems, Inc.*, No. ___,
1989 WL 572087, at *1 (Ohio Com. Pl. Feb. 27, 1989); *State ex rel. Celebrezze v. Landing at
Clay's Park, Inc.*, No. 88-375, 1988 WL 1004312, at *4 (Ohio Com. Pl. July ___, 1988).

[5]  Section 1703.03 provides:

> No foreign corporation not excepted from sections 1703.01 to 1703.31 of
> the Revised Code, shall transact business in this state unless it holds an unexpired
> and uncanceled license to do so issued by the secretary of state.  To procure such
> a license, a foreign corporation shall file an application, pay a filing fee, and
> comply with all other requirements of law respecting the maintenance of the
> license as provided in those sections.

Ohio Rev. Code § 1703.03.

But there is a substantive difference between a licensing requirement and a registration

requirement.  *See Quality International Enterprises, Inc. v. IFCO Systems North America, Inc.*,

No. 23131, 2006 WL 3208589, at *3 (Ohio 9th App. Dist. Nov. 8, 2006).

The second point is important because it leads to the question of whether a registration

requirement falls within the scope of the OCSPA.  Not all statutory registration requirements do.

For example, the Ohio Revised Code also provides for registration of fictitious business names

with the Ohio Secretary of State.  Ohio Rev. Code § 1329.01.  Ohio appellate courts have held

that the § 1329.01 failure to register a fictitious business name with the Ohio Secretary of State

does not constitute a § 1345.02 violation and does not provide a consumer a private cause of

action under the OCSPA:

> R.C. Chapter 1345 contains the Consumer Sales Practices Act.  R.C.
> 1345.02 prohibits a supplier from engaging in any act that is unfair or deceptive
> during any portion of a consumer transaction, and that section also defines the
> acts that are considered unfair or deceptive. Likewise, R.C. 1345.03 defines
> unconscionable acts that are prohibited.  R.C. 1345.05 gives Ohio's Attorney
> General the responsibility and authority to adopt regulations to define unfair or
> deceptive acts that violate R.C. Chapter 1345.  Ohio Adm.Code Chapter 109:4-3
> specifies those acts determined by the Attorney General of Ohio to be unfair or
> deceptive acts.  The failure to report a fictitious name to the Secretary of State is
> not among the violations listed in R.C. 1345.02, 1345.03, and 1345.05, or in Ohio
> Adm.Code Chapter 109:4-3.
>
> In *Crull v. Maple Park Body Shop,* [36 Ohio App. 3d 153, 521 N.E.2d
> 1099 (Ohio 12th App. Dist. 1987)], the court specifically held that the mere
> failure to report the use of a fictitious name pursuant to R.C. 1329.01 is not an
> unfair or deceptive act or practice in violation of the CSPA.  The court reasoned
> that in some cases, such as when a business uses numerous fictitious names in a
> concerted effort to avoid its responsibilities to consumers, the failure to report the
> use of a fictitious name may be some evidence, when combined with other
> factors, of a deceptive or unfair consumer practice.  However, the sole failure to
> report the use of the fictitious name does not provide the consumer with an
> individual cause of action.  Moreover, R.C. 1329.10 states that the Attorney
> General, upon the request of the Secretary of State, may bring an action against an

entity that fails or refuses to comply with the reporting requirements of R.C. Chapter 1329.  The Act does not provide a private cause of action.

We find the reasoning of the *Crull* court to be persuasive.  Here, the fictitious name used by Vaughn did not create a subterfuge preventing Ganson from attempting to obtain redress for alleged violations of the CSPA, and Ganson has failed to demonstrate that she was damaged or prejudiced in any way by Vaughn's failure to report the use of the fictitious name to the Secretary of State. Where the failure to report is not listed in either R.C. Chapter 1345 or Ohio Adm.Code Chapter 109:4-3 as an unfair or deceptive act, and where no other deceptive acts are alleged in connection with the use of a fictitious business name, the mere failure to register does not violate the CSPA.  Thus, we hold that the trial court did not err in ruling that Vaughn's failure to report the use of a fictitious name to Ohio's Secretary of State was not a deceptive practice for which Ganson was entitled to recover.

*Ganson v. Vaughn*, 135 Ohio App. 3d 689, 694, 735 N.E.2d 483, 486-87 (Ohio 1st App. Dist. 1999) (footnotes omitted).

Another judicial officer in this District has reached the same conclusion regarding §§ 1329.01 and 1345.02 in *Foster v. D.B.S. Collection Agency*, No. 01-CV-514, 2002 WL 32993859 (S.D. Ohio Mar. 8, 2002).  There, the defendant had failed to re-register use of a fictitious business name with the Ohio Secretary of State.  Citing *Ganson* and *Crull*, the *Foster* court concluded that the failure to register does not constitute an actionable wrong under the OCSPA.  *Id.* at *9.  Although the *Foster* rationale explicitly acknowledged that there is a factual difference between the failure to re-register a name and the failure to register a name at all, the court also recognized that this difference was ultimately immaterial to an attempted OCSPA action by a consumer because the Ohio Attorney General is the only person with the authority to bring such a claim on these specific unfair or deceptive trade practices.  *Id.* at *9 fn.13.  Another judge in the Northern District of Ohio has echoed this conclusion.  *Abele v. Bayliner Marine*

*Corp.*, 11 F. Supp. 2d 955, 965 (N.D. Ohio 1997) ("Plaintiff claims that Defendant Brunswick

violated the OCSPA by doing business in the state of Ohio without registering its trade name

with the Secretary of State in violation of Ohio Rev. Code § 1329.01. Failure to register a trade

name with the Secretary of State is not, *per se,* an unfair or deceptive act or practice in violation

of OCSPA. Furthermore, there is no private right of action for a violation of § 1329.01."

(citations omitted)).

   The foregoing authority suggests that the rationale of *licensing* cases such as *Gem

Collectors* and *Venture Out Resorts* is inapplicable to cases such as here where Plaintiff, like the

plaintiffs in *Ganson* and *Crull*, attempts to recover in a private cause of action for violation of a

state *registration* requirement. Just as the failure to register a fictitious name under § 1329.01 is

not listed in § 1345.02(A) or Ohio Adm. Code Chapter 109:4-3, so too are violations of §§

1703.03 and 1705.54(A) equally absent. Thus, the Court is left with an argument by Plaintiff

that is essentially as clear as mud, with Plaintiff dubiously relying on authority that does not

support his right to summary judgment.[6]

   In sum, there is a dispute of material fact as to whether OptIn falls within the OCSPA and

Plaintiff has failed to demonstrate his entitlement to summary judgment for a failure to register

---

   [6] It is important to note that today's holding is simply that Plaintiff has failed to
demonstrate that he is entitled to summary judgment on his § 1345.02(A) claim for a violation of
§ 1705.54(A). The Court expresses no opinion on whether a private cause of action exists under
§§ 1345.02(A) and 1345.09 for a § 1705.54(A) violation (which is not subject to § 1329.10 as §
1329.01 is). Similarly, although the preceding discussion recognizes that a § 1329.01 violation
is not a § 1345.02(A) violation and does not afford a consumer a private cause of action, this
does not dispose of Plaintiff's citation in his amended complaint to a § 1329.01 as an alternative
theory for a § 1345.02(A) violation. (Doc. # 8 ¶ 12(p) ("failing to register a fictitious business
name with the Ohio Secretary of State prior to doing business in Ohio under such fictitious
name").) Plaintiff has not cited the fictitious-name registration requirement in his summary
judgment motion.

with the Ohio Secretary of State.  The Court therefore **DENIES** Plaintiff's motion for summary

judgment.  (Doc. # 30.)

### IV.  Conclusion

For the foregoing reasons, the Court **DENIES** both Plaintiff's motion to strike (Doc. #

45) and Plaintiff's motion for summary judgment (Doc. #30).

**IT IS SO ORDERED**.

        /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE